IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

SAMANTHA PONDER            )
                           )
v.                         )    No. 3:17-1152
                           )
COMMISSIONER, SOCIAL SECURITY )
ADMINISTRATION[1]          )

To:   The Honorable Waverly D. Crenshaw, Chief District Judge

# **R E P O R T   A N D   R E C O M M E N D A T I O N**

Currently pending is Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 20. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled," and therefore not entitled to Disability Insurance Benefits ("DIB") or Supplemental Security Income ("SSI"). (*See* Administrative Transcript, DE 14 at 8-10).[2] This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a Report and Recommendation. *See* DE 5.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq*. Pursuant to Fed. R. Civ. P. 17(d), a public officer who is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill is no longer the Acting Commissioner, the Clerk is DIRECTED to identify Defendant by the official title rather than by name.

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "Tr." followed by the corresponding page number(s) as denoted by the large black print on the bottom right corner of each page.

Upon review of the administrative record and consideration of the parties' filings, I recommend that Plaintiff's motion (DE 20) be **DENIED**.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff has filed multiple applications for disability benefits. Plaintiff first filed applications for DIB and SSI on October 5, 2010 based on alleged conditions of blindness, cervical cancer, and anxiety, with an onset date of September 1, 2006. (Tr. 62-63, 140-41). Her applications were denied, however, and there is no indication that she applied for reconsideration of these decisions. (Tr. 62-63). Plaintiff instead filed separate applications for DIB and SSI on May 3, 2013, in which she alleged disability beginning on December 31, 2011 due to blindness, speech problems, learning problems, bipolar disorder, anxiety, and bunion surgery. (Tr. 80, 97, 149-52). These applications were also denied, both initially and upon reconsideration. (Tr. 116, 135). Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ H. Scott Williams on September 28, 2015. (Tr. 29).[3] On March 21, 2016, the ALJ denied the claim. (Tr. 8-10). On June 16, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. (Tr. 2-4). Therefore, the ALJ's decision stands as the final determination of the Commissioner.

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since December 31, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: scoliosis of the lumbar spine, lumbar radiculopathy, sciatica, sacroiliac joint dysfunction, depressive disorder,

---

[3] Claimant again appeared with counsel before the ALJ on February 23, 2016 for a "supplemental hearing" that involved additional testimony from a vocational expert. (Tr. 52-61).

anxiety disorder, bipolar disorder, and borderline intellectual functioning (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with lifting 20 pounds occasionally and 10 pounds frequently; standing/walking 6 hours; sitting 6 hours; frequently reach; occasionally push and pull and crawl; never climb ladders/ropes/scaffolds; never be exposed to unprotected heights; occasionally operating a motor vehicle; occasional exposure to moving mechanical parts; can understand, remember, and maintain concentration and persistence for simple tasks; respond to supervisors, co-workers, and the general public on an occasional basis; can adapt to usual work situations and occasional changes in work setting.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 26, 1985 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not at issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13-21).

On appeal, Plaintiff submits two assertions of error: (1) that the residual functional capacity ("RFC") determination is not supported by substantial evidence; and (2) that the ALJ failed to provide substantial evidence to support his decision to reject the treating physician's opinion. DE 21 at 2. Plaintiff therefore requests that this case be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 22.

**II.   ANALYSIS**

**A. Standard of Review**

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step

and the claim is not reviewed further. *Id*. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's RFC and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id*. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id*. §§ 404.1520(a), 416.920(a). "Past relevant work" is defined as work that claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)(1)). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301,

303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The Commissioner's Decision

The ALJ resolved the current Plaintiff's claim at step five of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ found that Plaintiff's RFC allowed her to perform light work with express limitations to account for her severe impairments, and that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform despite such limitations. (Tr. 13-21).

### C. Assertions of Error

#### 1. The RFC.

A claimant's RFC is defined as "the most an individual can still do after considering the effect of the physical and mental limitations that affect the ability to perform work-related tasks." *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 594 (6th Cir. 2005) (citing 20 C.F.R. § 404.1545). The ALJ, and not a physician, determines a claimant's RFC after reviewing all of the relevant evidence of record, both medical and non-medical. *Rudd v. Comm'r of Soc. Sec.*, 531 F.

App'x 719, 728 (6th Cir. 2013). A severe impairment may or may not affect a claimant's functional capacity to do work, as one does not necessarily establish the other. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal citation omitted).

An ALJ is permitted to utilize a vocational expert ("VE") at step five of the evaluation process to provide testimony as to whether the claimant, in light of her RFC, can perform other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c). Testimony elicited from a VE indicating that a claimant can perform other work in the national economy constitutes substantial evidence in support of an ALJ's finding that the individual is not disabled if the testimony is given in response to a hypothetical question that "accurately sets forth the plaintiff's physical and mental impairments." *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (internal citation omitted).

The ALJ employed this method at the administrative hearing, during which he posed a hypothetical to a VE based partially on the mental limitations recommended by Dr. Linda Blazina, who conducted a mental evaluation of Plaintiff on August 6, 2013. (Tr. 850-55). However, despite according "great weight" to Dr. Blazina's opinion (Tr. 18), the ALJ did not include the following restriction from Dr. Blazina's report in the hypothetical or the ultimate RFC assignment: "[Plaintiff's] ability to sustain her concentration, attention, and persistence currently appears moderately impaired due to restlessness." (Tr. 850-55).[4] The ALJ instead

---

[4] Although Dr. Blazina measured Plaintiff's ability to maintain "concentration, *attention*, and persistence" ("CAP"), this functional area is generally referred to as a measure of concentration, persistence, and *pace* ("CPP"). *See, e.g., Smith*, 307 F.3d at 379. There is no substantive difference in these phrases, however, as CPP is actually defined as a claimant's "ability to sustain focused *attention* sufficiently long to permit the timely completion of tasks found in work settings." *Teal v. Comm'r of Soc. Sec.*, No. 10-13154, 2011 WL 4484864, at *4 (E.D. Mich. Sept. 26, 2011) (internal citation omitted). Plaintiff even mistakenly characterizes Dr. Blazina's opinion as including "significant limitations in concentration, persistence, and pace." DE 21 at 10. The terms "CAP" and "CPP" are therefore used interchangeably for purposes of this Report and Recommendation.

crafted a hypothetical involving a claimant who "would be limited to understanding, remembering, ... [and] carrying out and maintaining concentration and persistence for simple tasks" (Tr. 56), which was ultimately incorporated into the RFC. (Tr. 15). Plaintiff asserts that the ALJ's failure to explain the omission of Dr. Blazina's CAP limitation from the RFC constitutes reversible error. DE 21 at 6-9.

The Court begins by noting that courts from this circuit have resolved Plaintiff's argument both ways. *See Hernandez v. Comm'r of Soc. Sec.*, No. 10-cv-14364, 2011 WL 4407225, at *9, n.4 (E.D. Mich. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 4406346 (E.D. Mich. Sept. 22, 2011) (collecting cases). This disharmony is likely due to the absence of a "bright line rule regarding the manner in which moderate impairment in concentration, persistence and pace are accounted for in a RFC determination." *Frye v. Astrue*, No. 1:11-cv-1019, 2012 WL 1831548, at *15 (N.D. Ohio Apr. 9, 2012), *report and recommendation adopted*, 2012 WL 1831537 (N.D. Ohio May 18, 2012). As a result, some courts have held that limiting a claimant to "simple unskilled work" is insufficient to accommodate moderate difficulties with CPP, *Long v. Comm'r of Soc. Sec.*, No. 09-14227, 2010 WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010), *report and recommendation adopted*, 2011 WL 1239776 (E.D. Mich. Mar. 30, 2011), while others have held the opposite. *See Bohn-Morton v. Comm'r of Soc. Sec.*, 389 F. Supp. 2d 804, 807 (E.D. Mich. 2005) (holding that an RFC limiting claimant to "unskilled work" was sufficient to account for ALJ's finding that claimant "often" experiences CPP issues). Importantly, the determination as to whether such verbiage is sufficient depends on the particular facts of the case. *See id.* at 807 ("[A] particular assessment on a [mental RFC] does not mandate a rigid checklist of restrictions that must be included in this questioning. Rather, a case-by-case determination is required[.]").

Notably, the Sixth Circuit has held that even when an ALJ accords great weight to the opinion of a non-treating physician, the ALJ is not required to adopt that opinion "verbatim" or accept "wholesale" the limitations contained therein. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). The proper inquiry for a reviewing court is instead whether the ALJ elicited testimony from the VE in response to a "hypothetical question that accurately sets forth the plaintiff's physical and mental impairments." *Smith*, 307 F.3d at 378 (citing *Varley v. Sec'y of HHS,* 820 F.2d 777, 779 (6th Cir. 1987)).

Plaintiff cites two Sixth Circuit cases as part of her argument that the ALJ failed to fulfill this duty, one of which has little in common with the current matter. In *Lancaster v. Comm'r of Soc. Sec.*, the Sixth Circuit reversed the Commissioner's denial of benefits based on the ALJ's unfounded inclusion of "moderate" mental limitations in the claimant's RFC after eliciting testimony from a VE regarding available jobs that described only "mild" limitations in mental functioning. *See* 228 F. App'x 563, 572-73 (6th Cir. 2007). That ALJ's erroneous assignment of moderate restrictions following VE testimony that dealt exclusively with mild restrictions is a different scenario that fails to support Plaintiff's claim that the instant ALJ erred by omitting Dr. Blazina's CPP limitations. *Cf. id.* ("The ALJ erred in relying on these jobs because they were discussed exclusively in the context of mild restrictions, and not the moderate restrictions which the ALJ ultimately found in Plaintiff.").

Plaintiff also relies on the Sixth Circuit's decision in *Ealy v. Comm'r of Soc. Sec.*, in which the court held that an ALJ's failure to accurately represent a claimant's mental condition to a testifying VE necessitated remand. 594 F.3d 504, 516-17 (6th Cir. 2010). Specifically, the ALJ in that case posed a question to the VE, based on a non-examining State agency physician's opinion that the claimant suffered from moderate difficulties in CPP, which asked whether a

9

hypothetical claimant who was limited to "simple, repetitive tasks and instructions in non-public work settings" would be able to procure employment. *Id*. at 516. The ALJ incorporated this restriction into the RFC assignment after the VE testified that a number of jobs would be available to such a claimant. *Id*. However, the Sixth Circuit reversed the Commissioner's decision due to the ALJ's failure to include the physician's additional opinion that the claimant's ability to "sustain attention to complete simple repetitive tasks" was limited to "two-hour segments over an eight-hour day where speed was not critical." *Id*. at 516-17.

This additional restriction to "two-hour segments over an eight-hour day where speed was not critical" is a crucial distinction that separates *Ealy* from the current case. The Sixth Circuit has since explained that the omission of this restriction was the decisive factor that prompted remand, as the hypothetical failed to adequately convey the full extent of the claimant's limitations to the VE:

> [The claimant's] first challenge concerns her [CPP]. She relies on *Ealy* [] to support her argument that more specific limitations should have been included in the hypothetical to the VE. Yet, *Ealy* is distinguishable from this case. In *Ealy,* the claimant's doctor limited him to "simple, repetitive tasks [for] [two-hour] segments over an eight-hour day where speed was not critical." [] In that RFC assessment, however, the ALJ included only a limitation to "simple repetitive tasks and instructions in nonpublic work settings." [] That RFC finding was included in the hypothetical to the VE. [] This court held that the RFC assessment and the hypothetical did not adequately reflect the claimant's limitations because it truncated the doctor's specific restrictions. []
>
> Here, the limitation to simple, routine, and repetitive tasks adequately conveys [the claimant's] moderately-limited ability "to maintain attention and concentration for extended periods." Unlike in *Ealy,* [the state agency consultant] did not place any concrete functional limitations on her abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks. Instead, [the state agency consultant] plainly determined that [the claimant] could perform simple tasks on a "sustained basis," even considering her moderate limitations in maintaining concentration and persistence for "extended periods." In other words, the limitation to simple tasks portrays the tasks that she can perform without being affected by her moderate limitations. The ALJ thus did not

> fail to include a restriction on her ability to maintain [CPP] while performing simple tasks[.]

*Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014). Similarly, Dr. Blazina included no concrete limitations on Plaintiff's ability to maintain CPP, instead opining broadly that such capacity "appears moderately impaired," but not to the extent that it would affect her ability to perform simple tasks. (Tr. 855). The ALJ therefore sufficiently accommodated this opinion by including a restriction in the RFC to jobs that require the ability to maintain concentration and persistence for simple tasks. *See Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (holding that psychiatrist's opinion that claimant had "moderate, but not marked" limitations in her ability to maintain attention and concentration was accommodated by RFC limiting claimant to "simple tasks").

The Court also notes that in addition to Dr. Blazina, two separate non-examining physicians determined that Plaintiff was moderately impaired in her ability to maintain CAP. (*See* Tr. 74-75, 91-92, 855). The ALJ specifically cited Dr. Blazina's report in concluding at step two that Plaintiff experienced "moderate difficulties" with respect to CPP. (Tr. 14). Therefore, the ALJ did not make a finding independent of any medical source that Plaintiff suffered from moderate limitations in CPP, which further weighs against Plaintiff's argument that a reversible error was committed. *Cf. Ervin v. Comm'r of Soc. Sec.*, No. 2:15-cv-13352, 2017 WL 955129, at *3 (E.D. Mich. Mar. 13, 2017) ("[W]here an ALJ—*and not any medical source*—determines that a claimant has moderate impairments in CPP, the ALJ must include such limitation in the RFC assessment or hypothetical posed to the VE.") (emphasis added). There are multiple cases from this circuit endorsing the position that remand is necessary only when the ALJ himself concludes that a claimant is subject to "moderate" limitations in CPP, but fails to include this restriction in the RFC. *See Hicks v. Comm'r of Soc. Sec.*, No. 10-cv-13643, 2011 WL 6000714, at *8 (E.D.

11

Mich. Aug. 30, 2011), *report and recommendation adopted*, 2011 WL 6000701 (E.D. Mich. Nov. 28, 2011) (collecting cases).

Additionally, and contrary to Plaintiff's suggestion otherwise, *Ealy* did not endorse any requirement that an ALJ incorporate specific limitations regarding CPP into a hypothetical posed to a VE. *See Randall v. Comm'r of Soc. Sec.*, No. 2:17-CV-785, 2018 WL 2990183, at *7 (S.D. Ohio June 14, 2018) ("*Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions ... *Ealy* does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in [CPP].") (internal citation omitted). Indeed, numerous courts, including the Sixth Circuit, have confirmed the narrow applicability of the decision. *See, e.g., Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) ("*Ealy* is distinguishable from Kepke's case, however, because there, one of the claimant's doctors specifically limited his ability to sustain concentration to "simple repetitive tasks [for] '[two-hour] segments over an eight-hour day where speed was not critical.'" ... Kepke, however, has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain [CPP] while doing simple, unskilled work."); *Jones v. Comm'r of Soc. Sec.*, No. 1:16-CV-68-SKL, 2017 WL 5015526, at *7 (E.D. Tenn. Aug. 22, 2017) (holding that a restriction to "simple, repetitive tasks" sufficiently accommodated a moderate impairment in CPP based on the absence of the *Ealy* claimant's "special requirement" that limited sustained CPP to two-hour segments); *Hycoop v. Comm'r of Soc. Sec.*, No. 1:15-CV-795, 2016 WL 4500794, at *3 (W.D. Mich. Aug. 29, 2016) ("Unlike *Ealy*, the ALJ did not find that Plaintiff was subject to a specific speed and pace restriction (such as working two hour segments over an eight-hour day where speed was not critical). Rather, the ALJ found that Plaintiff had only

moderate limitations with regard to [CPP] .... Such limitations could be accommodated by performing "simple, routine work.") (internal citation omitted). While Plaintiff claims that she does not advocate a "formalistic or formulaic application" of the *Ealy* decision (DE 21 at 8), she cites no evidence indicating that the assigned RFC fails to accommodate her moderate limitations with respect to CPP, which renders the decision inapplicable. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:10-cv-763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011) ("In *Ealy,* the claimant presented evidence from the record that showed the claimant's limited ability to maintain attention over time, even when performing simple, repetitive tasks .... Here, unlike *Ealy,* Plaintiff refers to no record evidence to suggest that she had any greater limitations than those identified by the ALJ.").

Plaintiff instead states broadly that "the record plainly supports the conclusion that an RFC for 'simple' work is not sufficient" (DE 21 at 8), which fails to convince the undersigned that the RFC inadequately integrates her moderate impairment in CPP. *See Randall*, 2018 WL 2990183, at *7 ("Courts only follow *Ealy* where a claimant's particular limitations require additional restrictions that the rest of the RFC fails to capture."). Moreover, a review of the record indicates that only Plaintiff's treating physician, Dr. Michael Hill, recommended more severe limitations than those included in the RFC. (*See* Tr. 946-47). As discussed in more detail below, however, the Court finds no error in the ALJ's rejection of this opinion based on Dr. Hill's failure to proffer any justification for the severity of the mental limitations contained therein. This leaves only Plaintiff's allegations regarding the severity of her deficiencies in CPP, which are insufficient to establish disability. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) ("[S]ubjective allegations of disabling symptoms ... cannot alone support a finding of disability.") (citing 20 C.F.R. § 404.1529(a)). Even if Plaintiff's

allegations were sufficient, the ALJ concluded that her claims were not entirely credible based on their inconsistency with statements she made to medical providers and during the administrative hearing. (*See* Tr. 16, 19).[5] The undersigned thus finds no reason to "convert judicial review of [the ALJ's decision] into a ping-pong game" that ends with Plaintiff again being found ineligible for disability benefits. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009) (quoting *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766, n.6, 89 S. Ct. 1426, 22 L. Ed. 2d 709 (1969)).

The "essential question" in the instant matter is whether the hypothetical posed to the VE and the corresponding RFC adequately reflect the extent of Plaintiff's impairment with respect to CPP. *Frye*, 2012 WL 1831548, at *15. Because Plaintiff has failed to demonstrate deficiencies in CPP that warrant a more restrictive RFC, the Court finds no error in the ALJ's determination. *See Smith-Johnson*, 579 F. App'x at 436 (holding that the ALJ adequately portrayed the claimant's limitations in the RFC and hypothetical question despite failing to use "the exact language" of providers whose opinions were accorded significant weight). Plaintiff's assertion of error is therefore rejected.

### 2. The treating physician's opinion.

Plaintiff next asserts that the ALJ violated the so-called "treating physician rule," which mandates that an ALJ must give controlling weight to an opinion provided by a treating physician if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

---

[5] The ALJ also noted that Plaintiff was dismissed from treatment by one provider following three separate abnormal drug screenings (Tr. 19, 992-93), a circumstance that was properly considered in discounting her credibility. *See Robertson v. Colvin*, 2015 WL 5022145, at *6 (E.D. Tenn. 2015).

record." 20 C.F.R. § 404.1527(c)(2).[6] If the ALJ does not accord controlling weight to the treating physician's opinion, the ALJ must still consider the amount of weight to give the opinion. *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 751 (6th Cir. 2011) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010)). The reasons provided for that weight "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight." *Johnson-Hunt v. Comm'r of Soc. Sec.*, 500 F. App'x 411, 418 (6th Cir. 2012) (quoting *Helm v. Comm'r of Soc. Sec.,* 405 F. App'x 997, 1000 (6th Cir. 2011)).

The record indicates that Plaintiff treated with Dr. Michael Hill, a psychiatrist, a total of nine times between March of 2013 and December of 2014. (*See* Tr. 804, 810, 871, 877, 884, 891, 907, 913, 919). During three of these visits, Plaintiff listed her "chief complaint" as "feel[ing] sleepy during the day." (Tr. 804, 810, 871). When prompted to provide her primary complaint on August 19, 2013, Plaintiff noted that she had "improved a lot." (Tr. 877). In each of her remaining five encounters with Dr. Hill between March and December of 2014, she identified her chief complaint as "I have no headaches." (Tr. 884, 891, 907, 913, 919).

Dr. Hill diagnosed Plaintiff with bipolar disorder during their initial encounter in March of 2013 (Tr. 807), and later diagnosed her with attention deficit hyperactivity disorder ("ADHD"). (Tr. 887). After noting that Plaintiff was "more symptomatic" during a subsequent encounter in June of 2013 (Tr. 813),[7] Dr. Hill observed that Plaintiff's condition had improved

---

[6] The treating physician rule applies to all Social Security claims filed before March 27, 2017, such as the instant one. *See* 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017). Additionally, 20 C.F.R. § 404.1527, which applies to claims for DIB, is analogous to 20 C.F.R. § 416.927, which applies to claims for SSI. For ease of reference, the Court refers solely to 20 C.F.R. § 404.1527 in this Report and Recommendation.

[7] Of note, Dr. Hill remarked that Plaintiff appeared "more symptomatic" before noting that she had a pending claim for disability benefits, and thus exhibited a "strong desire to focus on [her]

15

significantly in August of 2013. (Tr. 877-880). Plaintiff then proceeded to skip several scheduled appointments between March and June of 2014. (Tr. 895-906). During each of Plaintiff's final three documented encounters in July, October, and December of 2014, Dr. Hill noted that Plaintiff's condition was "stable" and assigned her a global assessment of functioning ("GAF") score of 65. (Tr. 907, 911, 916-17, 922-23).[8] The Court notes that a GAF score between 61 and 70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships." Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Revision 2000) ("DSM-IV-TR").

Despite such relatively mild findings, Dr. Hill completed a medical source statement ("MSS") in March of 2015 which opined that Plaintiff suffers from "marked" deficiencies in CPP, and indicated that she has experienced "[r]epeated [e]pisodes of deterioration or decompensation in work or work-like settings[.]" (Tr. 947).[9] Plaintiff argues that the ALJ failed to provide "good/specific/supported" reasons for giving little weight to this opinion (DE 21 at 9-10), yet the ALJ explicitly noted that Dr. Hill's treatment records demonstrated improvement in her condition, as evidenced by the increasingly higher GAF scores assigned by Dr. Hill. (Tr. 18-19). Such evidence reinforces the "supportability" of the opinion and its "consistency" with the record as a whole, both of which are proper factors for consideration. *See* 20 C.F.R. § 404.1527(c)(3), (4). The ALJ also highlighted Dr. Hill's failure to accurately identify Plaintiff's lowest GAF score during the last twelve months (Tr. 18), an internal inconsistency which the

---

condition." (Tr. 813). Dr. Hill encouraged Plaintiff to "focus on a course of wellness" instead of her disability claim. (Tr. 813).

[8] GAF is a "clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 503, n.7 (6th Cir. 2006).

[9] The MSS does not define the severity of a "marked" limitation.

ALJ appropriately acknowledged in discounting the MSS. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 258 (6th Cir. 2016). Furthermore, and perhaps most significantly, the ALJ noted that Dr. Hill's MSS fails to provide any explanation of his opinion, which weighs against the supportability of the conclusions contained therein. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, ... the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion.). Dr. Hill's opinion is therefore little more than a "check-box analysis" that represents "weak evidence at best." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474-75 (6th Cir. 2016) (internal citation omitted).

In an attempt to rescue the deficient MSS, Plaintiff argues that the mild findings contained in Dr. Hill's office records should be overlooked because medical providers "do not prepare medical records in anticipation of litigation" (DE 21 at 13), a position that swims against the current of relevant case law. *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 584 (6th Cir. 2010) ("Because the record adequately supports the finding that [the treating physician's] medical opinion was not supported by her own treatment notes and was inconsistent with the record as a whole, the ALJ was warranted in discrediting her opinion."). Plaintiff also relies heavily on notes involving home visits with a case manager ("CM") (DE 21 at 16-20), despite such records revealing, at best, a mixed bag of mental symptoms, including favorable findings such as improvement in her mood (Tr. 618), a decrease in anger symptoms (Tr. 630), a lack of angry outbursts and anxiety that she described as "fine" (Tr. 624), as well as effective medication

response. (Tr. 622, 634).[10] Plaintiff therefore suggests that the ALJ should have ignored the mild findings documented in Dr. Hill's office notes and accepted the unsupported, unexplained conclusions contained in the MSS based on Plaintiff's own selective description of her symptoms to the CM and Dr. Hill's status as treating physician, a posture that is incongruous with Sixth Circuit precedent. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir. 1986) ("[S]ubjective allegations of disabling symptoms ... cannot alone support a finding of disability."). The Court thus finds no merit in Plaintiff's contention.

As long as the ALJ's decision is supported by substantial evidence, reversal is not warranted "even if substantial evidence would support the opposite conclusion." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citing *Longworth,* 402 F.3d at 595). Although the ALJ must explain why a treating physician's opinion is not entitled to controlling weight, this does not require an "exhaustive, step-by-step analysis." *Perry v. Comm'r of Soc. Sec.*, No. 17-4182, 2018 WL 2470915, at *3 (6th Cir. June 4, 2018) (internal citation omitted). Here, the ALJ provided a detailed explanation of his decision to accord little weight to Dr. Hill's opinion, including its lack of supportability and inconsistency with the record as a whole. The ALJ also highlighted Dr. Hill's failure to provide any justification for his conclusions, which further bolsters his weight distribution. *See See Jackson v. Comm'r of Soc. Sec.*, No. 1:16-cv-236, 2016 WL 7009784, at *5 (W.D. Mich. Dec. 1, 2016) (affirming ALJ's decision to accord little weight to a treating physician's "checkbox worksheet" opinion that failed to "provide a logical bridge between objective treatment records and the reported limitations"). The Court further notes that

---

[10] The Court also notes that despite her claim of difficulty with social functioning outside of her house, Plaintiff was not present for numerous home visits with the CM (Tr. 599, 613, 631,655, 659, 661, 669, 671, 677, 685, 711, 713, 723, 759), and even stated that she had been "out running errands" during one such attempted home visit. (Tr. 611-12). As discussed by the ALJ, such evidence stands in contrast to her claim that she "can't go out and do anything really." (Tr. 19, 332).

Plaintiff's most recent GAF score of 65, assigned by Dr. Hill during each of his last encounters (Tr. 911, 917, 923), suggests that she possesses the capacity to perform the requirements of numerous jobs in the national economy. *Cf. Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) (finding that GAF scores "in the high 40s to mid 50s [] would not preclude [the claimant] from having the mental capacity to hold at least some jobs in the national economy."). The Court therefore rejects Plaintiff's assertion of error and finds that substantial evidence supports the ALJ's decision to discount Dr. Hill's opinion.

### III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 20) be DENIED and the Commissioner's decision be AFFIRMED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge